**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- x

MARIANNE NESTOR,                                    :

        ***Appellant,***      :

                :

   **-against-**         :    **1:24-cv-04063 (ALC)**

                :

**ALBERT TOGUT,**         :    <u>**OPINION & ORDER**</u>

        ***Appellee.***   :

                :

-------------------------------------------------------------------- x

**ANDREW L. CARTER, JR., District Judge:**

   This matter arises from *pro se* Appellant Marianne Nestor Cassani's ("Cassani" or "Appellant") appeal from the United States Bankruptcy Court for the Southern District of New York in the case *In re Peggy Nestor*, 23-10627 (MEW) (Bankr. S.D.N.Y.) (Michael E. Wiles, Bankr. J.) (the "Bankruptcy Action"). Here, Cassani appeals from the bankruptcy court's order dated May 20, 2024, denying her request for reconsideration of its denial of her motion to stay the bankruptcy proceedings, including staying the sale of property at issue in the bankruptcy proceedings and the effects of the bankruptcy court's order dated April 23, 2024 (the "Turnover Order"). For the reasons set forth below, the bankruptcy court's order with respect to the motion for reconsideration are **AFFIRMED**. Accordingly, the appeal is **DENIED.**

**BACKGROUND**

   Appellant's filings in both this suit and the bankruptcy action are convoluted and her requests are at times difficult to follow. For clarity, the Court begins with an overview of the bankruptcy proceedings and then addresses the issues on appeal before the Court. The Court assumes the parties' familiarity with the underlying facts and history of the prior proceedings, and references only the background information necessary to explain its decision to affirm.

1

I.        **Relevant Facts from the Record in the Bankruptcy Proceedings** [1]

a.  **Appellant's Involvement in the Bankruptcy Proceedings**

On February 23, 1984, Appellant and her sister, Peggy Nestor, purchased a townhome located on East 63rd Street, New York, New York, 10065 (the "Property"). The Property has seven units, is rent-stabilized, and has been occupied by owner Peggy Nestor since the initial purchase. The recorded deed for the Property states that Appellant and her sister are co-owners of the Property.

On April 25, 2023, Peggy Nestor (the "Debtor") filed a voluntary Chapter 11 petition commencing the Bankruptcy Action. In connection with those proceedings, in December 2023, Debtor agreed that the Property would be sold to cover debts owed by Debtor to various creditors. One issue that could have adversely affected Debtor's ability to sell the Property was the potential uncertainty as to who owned it. To avoid this issue, Debtor commenced an adversary proceeding against Marianne, seeking a declaration that the Property belonged only to Creditor and that Cassini had no ownership interest in it. In the alternative, Debtor asked for an order declaring that the Townhouse could be sold pursuant to section 363(h) of the Bankruptcy Code, which permits the sale of property that is jointly owned by a debtor and another person so long as certain conditions are satisfied.

During the adverse proceedings in the Bankruptcy Action, Csaani and her sister did not assert joint ownership of the Property. Instead, they claimed that Cassani had transferred her share in the Property in an unrecorded deed in 2016. Cassani did not file an opposition to Peggy's request for a declaration that the Property was owned solely by Peggy. In fact, Appellant did the exact opposite—Cassani filed an admission that stated "I acknowledge that I have no

---

[1] These facts are taken from the May 13 letter

ownership interest in the [Property]. Peggy Nestor is the Sole Owner of the [Property]." This was not the only time Appellant made such a statement. The record also reflects that in a hearing held on March 5, 2024, Cassani stated that (1) the Property was the sole property of Peggy Nestor, (2) she had never resided at the Property, and (3) that the Property is 100% owned by Peggy Nestor since 2019 by deed. In addition, Cassani signed an engagement letter with a real estate company to facilitate the sale of the Property , and on the agreement she added a note that "[Debtor] is the owner of [the Property]."

### b. Events Giving Rise to this Appeal

The Bankruptcy Court, in reliance on Debtor and Appellant's representations regarding ownership of the Property, made certain rulings. Then, on April 23, 2024, the Bankruptcy Court entered the Turnover Order: (i) compelling Appellant and Debtor to provide access to the Property to persons designated by the appointed trustee and turn over a set of keys for complete access within 48 hours after entry of the order, (ii) authorizing the Trustee to employ a locksmith to change locks and alarm codes, and (iii) declaring that the property was in the sole custody and control of the appointed trustee and, if necessary, that the assistance of the U.S. Marshals' Service could be used to facilitate the Trustee's entry into the Property and to remove any occupants found there. Dkt. No. 33, Exhibit A.

On April 29, 2024, the Bankruptcy Court received letters from both Debtor and Appellant dated April 27, 2024, asking for a stay in order to allow them to obtain counsel. *Id*. On April 30, 2024, the locks were removed from the Property and all occupants were evicted. *Id*.

On May 1, 2024, the bankruptcy court held a conference to address Debtor and Appellant's request for a stay. While not explicitly stated in the letter, it is clear from the transcripts that Appellant wanted to halt the sale of the Property and any potential activity by the

trustee under the Transfer Order so that she could retain counsel to assist her with the bankruptcy proceedings. Appellant argued that the bankruptcy proceedings should be stayed because she had a deed for the Property along with other documents that demonstrated that she owned a 50% interest in the Property, and as part-owner of the Property, she was not interested in proceeding with the sale of the property. The bankruptcy court held that because Appellant had represented to the Court on multiple occasions that she did not have an ownership interest in the Property, and the bankruptcy court relied on those representations for certain rulings, Appellant was judicially estopped from asserting any claims of ownership in the bankruptcy proceedings. The bankruptcy court thus denied Appellant's motion to stay.

On May 8, 2024, the bankruptcy court held a pretrial conference. At the conference, Appellant again raised the issue of her ownership interest in the property as a potential basis to stay the bankruptcy proceedings, including the sale of the property. The bankruptcy court again held that Appellant was estopped from raising the issue of her ownership given her prior representations. Appellant asked the bankruptcy court to reconsider; the bankruptcy court declined to do so.

On May 13, 2024, the bankruptcy court entered an order memorializing its rulings at the May 1 and May 8 conferences. Specifically, the bankruptcy court ordered that (i) Appellant's oral motion for reconsideration of the bankruptcy court's prior rulings was denied and (ii) that the trustee would remain in control and possession of the property and in control of the sale process that is underway. *Id*.

On May 14, 2024, Cassani again moved for reconsideration of the Court's denial of her request for a stay based on her interest in the property, which she claimed the bankruptcy court failed to consider.  On May 15, 2024, the bankruptcy court again denied Appellant's  request for

4

reconsideration. In its order denying the request, the bankruptcy court again explained that though it had carefully considered all of the materials submitted by Appellant demonstrating her interest in the property, Appellant was judicially estopped from raising arguments about her ownership for the reasons explained above. Appellant moved again for reconsideration on May 17, 2024, and May 20, 2024, raising the same ownership argument. Each argument was summarily denied by the bankruptcy court the same day on the basis of judicial estoppel. An appeal by Cassani of the bankruptcy court's May 20, 2024 denial to this Court followed. That appeal is addressed in turn below.

## II.    The Court's Determination of the Issue on Appeal

Before discussing the pending appeal, it is worth noting that Appellant's' requests are not always clear, but because she is proceeding *pro se*, the Court construes her motions "liberally . . . reading [her] submissions to raise the strongest arguments they suggest." *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022) (quoting *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted). To ensure the record is clear, below, the court first outlines both the relevant background information and the law that it has applied in its construction of Appellant's claims and then proceeds with an analysis of those claims.

### a.  Procedural Background

On May 28, 2024, Appellant filed her notice of appeal, initiating this action. Dkt. No. 1. In the notice of appeal, Cassani listed the date of the order that she was appealing as May 20, 2024. On June 4, 2024, Appellant filed her designation and statement of the bankruptcy record on appeal. Dkt. No. 2. In her designation and statement, Appellant asks the Court to declare that she is the 50% owner of the Property. On April 8, 2025, Appellee Albert Togut ("Appellee")

5

filed a counter designation and statement of the bankruptcy record on appeal. Dkt. No. 27. Likely due to the convoluted nature of Appellant's designation and statement, in his counter designation, Appellee noted that though inappropriate, Appellant may be trying to appeal the Turnover Order. On April 10, 2025, Appellant filed an amended designation and statement of the bankruptcy record on appeal Dkt. No. 28. The amended designation provided the court with electronic access to the record in the bankruptcy proceedings, but it raised no new arguments regarding her request for a declaration that she is a partial owner of the Property. Appellee's counter designation and statement demonstrate that there is a question of exactly which of the bankruptcy court's orders is before this Court on appeal. The Court addresses this below.

### b. Law Applicable to The Court's Determination of the Issue on Appeal

There are two rules relevant to the Court's determination of the issue on appeal: Federal Rule of Bankruptcy Procedure 8002(a) ("Rule 8002(a)") and Federal Rule of Bankruptcy Procedure 8009(a) ("Rule 8009(a)"). Rule 8002(a) requires that a notice of appeal be filed with the bankruptcy clerk within 14 days after the judgment, order, or decree, to be appealed is entered. Fed. R. Bankr. P. 8002(a). "The time limit contained in Rule 8002(a) is 'jurisdictional,' and in the absence of a timely notice of appeal in the district court, the district court is without jurisdiction to consider the appeal, regardless of whether the appellant can demonstrate excusable neglect [on appeal]." *In re 64-03 Realty LLC*, No. 24-cv-05685, 2025 U.S. Dist. LEXIS 175845, at *9 (E.D.N.Y. Sep. 9, 2025) (quoting *In re Siemon*, 421 F.3d 167, 169 (2d Cir. 2005)) (alteration original). Accordingly, an untimely appeal warrants dismissal by the district court. *Id*.

Federal Rule of Bankruptcy Procedure 8009(a) requires an appellant to "file with the bankruptcy clerk a designation of the items to be included in the record on appeal and a

statement of the issues to be presented" and to serve the same on the appellee within 14 days of the filing of a notice of appeal. Fed. R. Bankr. P. 8009(a).

### c. Analysis

Looking at the two rules together, and construing Appellant's notice of appeal (Dkt. No. 1) and designation and statement (Dkt. Nos. 2, 28) liberally, the strongest possible argument raised by Appellant with respect to the scope of this appeal is that she is appealing the bankruptcy court's denial of her request for reconsideration of the bankruptcy court's denial of her motion to stay. Several factors counsel in favor of this construction. First, the notice of appeal clearly lists the date of the order being appealed as May 20, 2024. A review of the record in the bankruptcy proceedings shows that the bankruptcy court's May 20, 2024 Order denied Appellant's request for reconsideration of that court's denial of her motion to stay. It is thus clear that the bankruptcy court's denial of Appellant's request for reconsideration is the only issue on appeal before this Court.

Second, while the law[2] in this circuit may permit the Court to construe Appellant's notice as appealing both the bankruptcy court's denial of her request for reconsideration and the bankruptcy court's ruling on her motion to stay, such a construction would not be the strongest possible argument raised by Appellant because it would require dismissal of the challenge to the motion to stay. In general, the "liberal treatment afforded to [Appellant] does not exempt [her] from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and internal quotation marks omitted). *Pro se*

---

[2] *See In re Mark IV Indus.,* 558 Fed. Appx. 135, 136 n.1 (2d Cir. 2014) ("While Hamilton's notices of appeal to this court might be construed only to challenge denial of reconsideration, we construe them liberally also to challenge the district court rulings for which reconsideration was sought."). Again, the underlying Motion to stay is not before this Court, but to the extent Appellant asserts that it is, the Motion is denied as untimely.

litigants "are generally required to inform themselves [of the] procedural rules and to comply with them." *Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) (citation omitted).

Here. the bankruptcy court denied Appellant's Motion to Stay on May 1, 2024. As outlined above, Rule 8002(a) would have required Appellant to file a notice of appeal within 14 days of May 1, 2024, which would have been May 15, 2024. Appellant did not file her notice of appeal until May 28, 2024. The time limit in Rule 8002(a) is jurisdictional; thus any challenge to the initial ruling on the motion to stay by Appellant would have been prohibited, and to the extent it is what she seeks here, that request is denied.

Third and finally, were the Court to ignore point two above and construe the appeal as a challenge to both the rulings on the motion for reconsideration and the underlying motion to stay, it still could not empower this Court to consider anything with respect to the Turnover Order. Appellant raised no challenge to the Turnover Order on the merits in the underlying proceedings. Instead, she sought to stay the sale of the Property and the enforcement of the Turnover Order. Even if the Court were to construe the motion to stay as a challenge to the Turnover Order, that challenge would fail for the reasons outlined in point two above.

For these reasons, the only order on appeal before the Court is the bankruptcy court's denial of Appellant's request for reconsideration of its ruling on her motion to stay. It is this order that the court analyzes in the sections that follow.

## LEGAL STANDARD

The Court begins with an overview of the applicable law to the appeal. As jurisdiction is a gating issue that a must resolve before reaching the merits of an action, this section first outlines the Court's potential avenues for jurisdiction in this matter, and then outlines the law that applies to the issue on appeal.

8

## I.    The Court's Jurisdiction Over the Appeal

The Court has jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C. § 158(a).[3] As outlined in the statute, final orders of the bankruptcy court may be appealed to the district court as of right, while interlocutory orders of the bankruptcy court may only be appealed with permission from the district court. 28 U.S.C. § 158(a). The Second Circuit has held that "[f]or purposes of appeal, the concept of "finality" is more flexible in the bankruptcy context than in ordinary civil litigation." *In re Palm Coast, Matanza Shores Ltd. Pshp.*, 101 F.3d 253, 256 (2d Cir. 1996). "'A bankruptcy court's order is 'final' if it completely resolve[s] all of the issues pertaining to a discrete claim, including issues as to the proper relief.'" *In re Adelphia Communs. Corp.*, 333 B.R. 649, 656 (S.D.N.Y. 2005) (*quoting In re Palm Coast, Matanza Shores Ltd. Pshp.*, 101 F.3d 253, 256 (2d Cir. 1996)).

Where a court determines that the order on appeal from the bankruptcy court is non-final (i.e., interlocutory), it must decide whether the interlocutory order can be treated as final under the collateral order doctrine, or if it should grant the appellant permission for the appeal pursuant to 28 U.S.C. § 158(a)(3). Interlocutory appeals are disfavored in this district. *See In re Genger*, 2025 U.S. Dist. LEXIS 117810, at *3 (S.D.N.Y. June 20, 2025).

### a.    Interlocutory Appeals Under the Collateral Order Doctrine

The collateral order doctrine is "a judicially created exception [that] allows immediate appeal from orders that are collateral to the merits of the litigation and cannot be adequately reviewed after final judgment." *In re Lyondell Chem. Co.*, No. 11-MC-387 (JPO), 2012 U.S. Dist. LEXIS 6428, at *10 (S.D.N.Y. Jan. 17, 2012) (quoting *Germain v. Connecticut Nat'l Bank*,

---

[3] 28 U.S.C. § 158(a) provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders and decrees . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges.

930 F.2d 1038, 1039-40 (2d Cir. 1991) (alteration original). Under the collateral order doctrine, courts may treat as final, certain interlocutory orders. *See In re ALBA Petroleos De El Salvador S.E.M. De C.V.*, 82 F.4th 105, 110 (2d Cir. 2023) (". . . final decisions also include a small class of collateral rulings that, although they do not end the litigation, are appropriately deemed final.") (internal quotation marks and citation omitted). The collateral order doctrine thus creates a limited exception to the final order requirement set forth in 28 U.S.C. § 158(a). *See Clean Air Car Serv. v. Clean Air Car Serv.*, No. 23-CV-8017(EK), 2024 U.S. Dist. LEXIS 23541, at *7 (E.D.N.Y. Jan. 25, 2024).

For the doctrine to apply, "a bankruptcy order 'must (1) conclusively determine a disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.'" *In re Lyondell Chem. Co.*, No. 11-MC-387 (JPO), 2012 U.S. Dist. LEXIS 6428, at *10-11 (S.D.N.Y. Jan. 17, 2012). "All three of the requirements for appeal under the collateral order doctrine must be met." *In re ALBA Petroleos De El Salvador S.E.M. De C.V.*, 82 F.4th 105, 110 (2d Cir. 2023) (internal quotation marks and citation omitted).

### b.  Interlocutory Appeals Under 28 U.S.C. § 158(a)(3)

To the extent the collateral order doctrine does not apply, the court may determine whether permission for an interlocutory appeal should be granted pursuant to § 158(a)(3). However, "[t]he standard for obtaining permission to take an interlocutory appeal from a non-final Bankruptcy Court order is stringent, as such appeals, like almost all interlocutory appeals, contribute to piecemeal litigation and so are disfavored." *In re Genger*, 2025 U.S. Dist. LEXIS 117810, at *3 (S.D.N.Y. June 20, 2025).

"For an interlocutory appeal to be granted, the order being appealed must (1) involve a controlling question of law (2) over which there is substantial ground for difference of opinion, and the movant must also show that (3) an immediate appeal would materially advance the ultimate termination of the litigation." *In re Adelphia Communs. Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005) (internal quotation marks and citation omitted). The decision whether to grant an interlocutory appeal from a bankruptcy court order is within the district court's discretion, and even if all three conditions are met, courts should only grant leave in exceptional circumstances. *Id*.

Under the first factor of the analysis, "the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Id*. "Questions regarding application of the appropriate law to the relevant facts are generally not suitable for interlocutory appellate review." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 658 B.R. 19, 25-26 (S.D.N.Y. 2024) (internal quotation marks and citation omitted). "The question must also be 'controlling' in the sense that reversal of the bankruptcy court would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome." *In re Adelphia Communs. Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005) (internal quotation marks and citation omitted).

Under the second factor of the analysis, "the 'substantial ground for a difference of opinion' must arise out of a genuine doubt as to the correct applicable legal standard relied on in the order." *Id*. "[T]here exists 'substantial ground for disagreement' over a controlling question of law when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.' However, the "mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial

11

ground for difference of opinion.' The reviewing court instead must 'analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is substantial ground for dispute.'" *Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 658 B.R. 19, 25-26 (S.D.N.Y. 2024) (citations omitted).

The third factor of the analysis is self-explanatory, so the Court simply notes that this factor would be met where, for example, "the appeal promised to advance the time for trial or shorten the time required for trial." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 658 B.R. 19, 26 (S.D.N.Y. 2024) *Id.*

## II.     The Standard of Review for a District Court Reviewing a Bankruptcy Court's Order Denying Reconsideration

"A bankruptcy court's denial of a motion to reconsider a disallowed claim is a discretionary decision, reviewed under the familiar and deferential abuse-of-discretion standard." *In re Mark IV Indus.*, 558 Fed. Appx. 135, 137 (2d Cir. 2014) (internal quotation marks and citation omitted). "A bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. Accordingly, a bankruptcy court's factual findings are accepted unless clearly erroneous, and its legal conclusions are reviewed de novo." *Siomkos v. Trinity Life Ins. Co.*, 2026 U.S. Dist. LEXIS 59437, at *7-8 (S.D.N.Y. Mar. 20, 2026) (internal quotation marks and citations omitted). A district court properly affirms the bankruptcy court's denial of a motion to reconsider where the district court determines that the motion presents no "new issues, but, rather, continue[s] to argue the merits of [previously raised] claims." *In re Mark IV Indus.*, 558 Fed. Appx. 135, 137 (2d Cir. 2014).

12

**DISCUSSION**

### I.      The May 20, 2024 Order is Not a Final Order

As discussed above, "a bankruptcy court's order is final if it completely resolves all of the issues pertaining to a discrete claim, including issues as to the proper relief." *In re Adelphia Communs. Corp.*, 333 B.R. 649, 656 (S.D.N.Y. 2005) (cleaned up). Here, the bankruptcy court's denial of Appellant's fourth motion for reconsideration did not pertain to a discrete claim in those proceedings, nor did it directly resolve any issues for relief. Therefore, it is clear that the bankruptcy court's May 20, 2024 order was not a final order. Having determined that the May 20, 2024 order is not a final order, the Court must now determine whether the interlocutory order can be treated as final under the collateral order doctrine, or if it should grant the appellant permission for the appeal pursuant to 28 U.S.C. § 158(a)(3).

### II.     The Collateral Order Doctrine Applies to the May 20, 2024 Order.[4]

The Court concludes that it has jurisdiction over Appellant's appeal under the collateral order doctrine. As noted above, the collateral order doctrine applies where a bankruptcy order (1) conclusively determines a disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment. All three prongs are met here. With respect to the first prong, the bankruptcy order conclusively determines whether reconsideration of its prior denial of Appellant's prior motions

---

[4] The Court's review of the May 20, 2024 Order and Appellant's filings in this suit (1) show no substantial ground for difference of opinion on the issues raised by the appeal and (2) no exceptional circumstances to overcome the general aversion to piecemeal litigation. The bankruptcy judge denied Appellant's request for reconsideration because she raised no new facts or law to support her motion. This is the basic standard that a party seeking reconsideration must meet, as explained later in this opinion, Because this principle is well settled, Appellant fails to meet her burden under the second factor of the analysis. The Court need not reach the other two requirements for interlocutory appeal Because Appellant cannot clear the second prong, and it declines to do so. *See In re Lyondell Chem. Co.*, No. 11-MC-387, 2012 U.S. Dist. LEXIS 6428, at *13 (S.D.N.Y. Jan. 17, 2012) (declining to reach the other two factors for an interlocutory appeal under § 158(a)(3) upon concluding that appellant's appeal raised "no substantial ground for difference of opinion.").

for reconsideration and the underlying motion to stay is warranted. With respect to the second prong, the issue of Appellant's request for reconsideration is wholly separate from the merits of the bankruptcy proceedings and does not impact them. With respect to the third prong, once the bankruptcy proceedings conclude, Appellant will be unable to seek review of the May 20, 2024 Order because she is not technically a party to the bankruptcy proceedings, her sister is. Because all three factors are met under the doctrine, the Court has jurisdiction over the appeal. Having determined that it has jurisdiction, the Court now addresses the merits of the appeal.

### III.    The Court's Analysis of the Issues on Appeal

There are three questions for the Court address on appeal:

1. Whether the Bankruptcy Court abused its discretion when it concluded that Appellant's fourth motion for reconsideration [Docket No. 161, and Adv. Pro. Docket No. 24] (the "Fourth Motion to Reconsider") was procedurally improper and raised no new points?

2. Whether the Bankruptcy Court abused its discretion when it concluded that the Fourth Motion to Reconsider did not cite any controlling decisions that were overlooked and would reasonably be expected to alter the conclusions reached by the Bankruptcy Court in its prior rulings?

3. Whether the Bankruptcy Court abused its discretion when it concluded that the Fourth Motion to Reconsider did not point to any facts or data that were overlooked and would reasonably be expected to alter the conclusions reached by the Bankruptcy Court in its prior rulings?[5]

For the reasons that follow, the Court concludes that the answer to all three questions is no.

To succeed on a motion for reconsideration, typically a movant must show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789

---

[5] These questions are taken from Appelle's counter designation and statement. Dkt. No. 27. As noted above, Appellant's filings are unclear; however, construing them liberally and to raise the strongest arguments they suggest, the Appellant's designations and statement would raise the same issues as those outlined by Appelle in his counter designation and statement. The Court thus proceeds with an analysis of those questions.

(2d Cir. 1983) (quotation marks omitted). A motion for reconsideration is not a vehicle for a party dissatisfied with a Court's prior ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues that have already been decided. *See In re Dunn*, No. 18-36566 (KYP), 2026 LX 40719, at *3-4 (Bankr. S.D.N.Y. Jan. 20, 2026). Failure to demonstrate that the Court overlooked controlling law or factual matters that had been previously put before it is a clear denial of a motion for reconsideration. *Id*.

Applying the abuse of discretion standard to Appellant's claim, the Court must accept the bankruptcy court's factual findings and review, *de novo*, its legal conclusions. Having reviewed the record, the Court concludes that Appellant failed to raise any new arguments, evidence, or law in connection with her fourth motion for reconsideration. Instead, the arguments and evidence presented to the bankruptcy judge during the fourth request for reconsideration were of the exact same nature as that presented for the underlying motion to stay and the three prior motions for reconsideration. Specifically, the arguments and evidence presented by Appellant for both the motion to stay and all four motions for reconsideration support her allegation of partial ownership of the Property under the deed. For example, Appellant submitted the deed in connection with both her requests for reconsideration on May 14, 2024 and May 20, 2024. The bankruptcy judge's denial of her motion for reconsideration was thus proper and consistent with the applicable law.[6]

---

[6] So too as the bankruptcy judge's denial of her motion to stay under the doctrine of judicial estoppel. *See In re Residential Capital, LLC*, 519 B.R. 890, 906 (Bankr. S.D.N.Y. 2014) ("To invoke judicial estoppel in the Second Circuit, (1) the party against whom it is asserted must have advanced an inconsistent position in a prior proceeding, and (2) the inconsistent position must have been adopted by the court in some matter." (internal quotation marks ad citation omitted). Under this standard, the bankruptcy judge's dismissal of Appellant's Motion to Stay was plainly correct, as she had previously represented that she was not a partial owner of the Property and she subsequently sought to enforce her rights as 50% owner of the property.

## CONCLUSION

For the reasons set forth above, the bankruptcy court's May 20, 2024 order is

**AFFIRMED**. The appeal is **DENIED.** The Clerk of Court is respectfully directed to close this

case.

**Dated:  March 31, 2026**
    **New York, New York**

                    **ANDREW L. CARTER, JR.**
                    **United States District Judge**